[No. 4732.]

## LYNCH v. THE PEOPLE.

1. **Instructions—Murder—Menaces.**

In a prosecution for murder an instruction that "mere words or menaces, no matter how aggravating or abusive, or profane or insulting, do not of themselves constitute a provocation for the commission of the crime of murder in any degree," is not subject to the objection that the word "menaces" is equivalent to an overt act and means a threat by act or demonstration as distinguished from a threat by words where other instructions clearly distinguish between words and threats, and overt acts.

2. **Instructions—Murder—Self-Defense—Danger—Bodily Injury.**

In a prosecution for murder an instruction requested purporting to embody the law defining the right of self-defense where a person entertains a well-grounded fear that he is in

imminent danger of being killed, or receiving at the hands of his adversary great bodily injury, was properly refused where the instruction tendered omitted the word "imminent" before the word "danger," and omitted the word "great" before "bodily injury."

3.  Murder—Evidence—Reputation of Deceased.

In a prosecution for murder, evidence on behalf of defendant as to the reputation of deceased for quarrelsomeness, violence and vindictive temper must be confined to reputation in the community in which the deceased resided, and limited to some reasonable time previous to, and connected with, the time of the homicide; and evidence offered not so restricted, and without any showing why the general rule as to proof of reputation should not be followed, was properly excluded.

4.  Murder—Evidence—Threats.

In a prosecution for murder where defendant and deceased had known each other for many years and defendant had testified that deceased had threatened to kill him, and testified that a few days before the homicide deceased had said to him that he, the deceased, was as game as defendant, and that defendant knew him of old, it was error to refuse to permit defendant to answer the question, what he thought the deceased referred to when he said that defendant knew him of old.

5.  Instructions—Evidence—Intentions—Credibility.

In a prosecution for murder where the defendant testified as to his intentions in committing the act, an instruction which told the jury that if the circumstances connected with the perpetration of the offense convinced them that defendant's statements as to his intentions were opposed to the circumstances, they should find that his intentions were as manifested by the circumstances, to the exclusion of his evidence, was an invasion of the province of the jury to determine the weight of the evidence and the credibility of witnesses, and was reversible error.

*Error to the District Court of Gunnison County.*
*Hon. Theron Stevens, Judge.*

Messrs. BROWN & NOURSE, Mr. G. K. HARTENSTEIN and Mr. S. D. CRUMP, for plaintiff in error.

Mr. N. C. MILLER, attorney general, and Mr. I. B. MELVILLE, for the people.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

Upon the trial, under an indictment for murder, the defendant was convicted and sentenced for voluntary manslaughter. The errors assigned for reversal of the judgment relate to instructions given and refused by the court, and to the rejection of evidence offered by defendant.

1. Instruction No. 10, given by the court of its own motion, was as follows:

"The court charges the jury that mere words or menaces, no matter how aggravating or abusive, or profane, or insulting, do not of themselves constitute a provocation for the commission of the crime of murder in any degree."

Defendant's objection to this instruction is directed to "menaces." His contention is that a menace means a threat by act or demonstration, as distinguished from a threat by words, and that, as used in this instruction, it is equivalent to an overt act, and, if so used, the instruction is prejudicial.

The lexicographers and law writers regard menace as synonymous with "threat." Webster; Bouvier, p. 397; Black, 767; 1 McClain on Criminal Law, § 730; Kerr on Homicide, § 171. It doubtless has other meanings. We are of opinion that it was used in this instruction as synonymous with threat by word of mouth. This is apparent from the use of the preceding word "mere" and the immediately following phrase, "no matter how aggravating or abusive, or profane, or insulting." "Aggravating" might characterize an overt act, but it is not so usual to speak of an overt act as "abusive, profane or insulting." They more naturally and properly refer to words and verbal threats. Then, too, in instructions 1 and 2, given by the court at the request of the district attorney, the proper distinction between

words and threats and overt acts is clearly drawn, so that, upon the whole, we are satisfied that the court used, and the jury understood, ''menace'' as synonymous with a verbal or oral threat. If so, the instruction was not erroneous. We are not to be understood as holding, under the facts, that the instruction attacked would be wrong, if menace was used to characterize a threat by some overt act. Such a question is not before us, and we express no opinion concerning it.

2. In refusing to give defendant's instructions Nos. 4 and 7 the court was right. They purported to contain the law defining the right of a person to defend himself when he entertains a well-grounded fear that he is in imminent danger of being killed, or receiving at the hands of his adversary great bodily harm; but the instructions tendered omitted the words ''great'' before ''bodily injury,'' and ''imminent'' before ''danger.'' A defendant, though he apprehends danger at the hands of an adversary, may not resort to self-defense unless he believes the danger to be ''imminent,'' and that he is about to suffer ''great'' bodily injury. Besides, in other portions of the charge, the court fully and fairly stated the law, as it is, which defendant, in these defectively stated propositions, sought improperly to have the court give to the jury.

3. The assignments of error directed to the rulings of the court upon the admission and rejection of evidence are, in the main, not well taken. Defendant sought to show the reputation of deceased for quarrelsomeness, violence and a vindictive temper. The general rule is said to be that evidence as to such reputation must be confined to the community in which the person lives whose reputation is sought to be shown, and limited to some reasonable time previous to, and connected with, the time of the homicide.

The offer of proof here was not so restricted.—
McKelvey on Evidence, § 119; 1 Greenleaf on Evidence (16th ed.), § 461(d); 5 Am. and Eng. Ency.
Law (2d ed.), 883. While the rule is not inelastic, and
the authorities say there are exceptions to it, yet the
defendant did not claim, or offer to show, any reason
why the usual practice should not be followed.

One question, however, which the court excluded,
ought to have been allowed. The defendant testified
that a few days before the homicide the deceased
had said to him that he, the deceased, was as game
as defendant, and that defendant knew him of old.
Upon the trial defendant was asked by his counsel
what he thought the deceased referred to when he
said that he knew him of old. While it may be true,
in one sense, as the attorney general insists, that it
was the province of the jury to determine what this
language meant, so, also, in view of the fact that
numerous threats, some communicated, others not,
had been made by the deceased concerning the
defendant, and defendant testified that deceased had
threatened to kill him, and that these parties had
known each other many years, it was proper for the
defendant to tell the jury what he understood by this
language. We allude to this matter so that, in case
of a new trial, defendant may be permitted to answer
the question propounded.

4. At the request of the district attorney, the
court gave what is called in the record plaintiff's
instruction No. 5, which reads:

"You are further instructed that, while the
defendant has been permitted to testify what his
intention was in doing any of the acts charged against
him, yet you are not to take his statements as to what
his intentions were as conclusive, but you are to
weigh them in connection with the other circumstances connected with the perpetration of the offense,

*and if the circumstances connected with the perpetration of the offense convince you that the statements of the defendant as to what his intentions were in shooting at William Conley are opposed to the circumstances connected with the perpetration of the offense, then it will be your duty to find that his intentions in so shooting were as manifested by the circumstances, to the exclusion of what he may say his intentions are."*

The italicized portion of this instruction is vigorously assailed. That it is palpably wrong and was grievously prejudicial to defendant, we have not the slightest doubt. It invades the province of the jury, which, when an issue of fact is submitted to them, possess the exclusive power to pass upon the credibility of witnesses and determine the weight and sufficiency of evidence.—*Fincher v. People,* 26 Colo. 169; *Roach v. People,* 77 Ills. 25, 31; Kerr on Homicide, § 169. The court here does not say, if the jury believed that the witnesses who testified to the circumstances connected with the perpetration of the offense spoke the truth, and that the statements of the defendant with respect to his intentions are untrue, that they may believe the former and disbelieve the latter; but it baldly instructs them that it is their duty to find that defendant's intentions in shooting the deceased were, not what he said they were, but what the circumstances manifested them to be, if only they should be convinced that defendant's statements were merely opposed to such circumstances. It would be difficult to phrase an instruction which more clearly than this one invades the well-understood province of the jury. The circumstances connected with the perpetration of the offense are what the witnesses testified to at the trial, and by this instruction the jury were, in effect, told that if the testimony of these witnesses was merely

opposed to that of defendant, their duty was to disregard the latter and accept the former, and this, too, even though the jury might believe that the statements which the defendant made as to what his intentions were in doing the shooting were true, and the testimony of the other witnesses relating to the circumstances false   The court substantially said: Accept circumstances, whether you believe them true or false, if only they oppose defendant's statements, which you may believe to be true.   It is too clear for argument that this was a harmful instruction to the defendant.

Judgment reversed and cause remanded for a new trial.                                    *Reversed.*