## ROBERT COOPER v. STATE.

186 So. 230.

Opinion Filed January 27, 1939.

*Rollo E. Karkeet* and *Joe Brown Booth,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

BUFORD, J.—The writ of error brings for review the judgment of conviction of murder in the second degree under indictment charging murder in the first degree.

The plaintiff in error suggests five questions for our determination. The first, third and fourth questions challenge the action of the court in refusing to give certain requested charges. The charges involved in the first and fourth questions were properly refused because they did not correctly state the applicable principles of law. The charge involved in the third question was properly refused because it was not applicable to the record.

The second question is, "Whether or not the dying declaration of the victim that the defendant had shot him and taken his money from him was sufficient in the absence of any other evidence to contradict the statement of the de-

fendant that he shot the victim in self-defense." This question assumes the existence of conditions, the assumption of which the record does not justify, because aside from the dying declaration of the deceased which was admitted in evidence, the testimony of the witness Sam Love, and other facts and circumstances, contradict the evidence of the defendant as to how the difficulty occurred.

The fifth question is stated as follows:

"Whether or not the following statement made by the State's Attorney in his argument to the jury, to-wit: 'But, gentlemen, while this is just another negro killing, it is important to the State of Florida, it is important to you jurors having taken your oath as a juror, it is important to you as citizens of this County, because it is your tax dollars that are being spent to try to keep some semblance of law and order out here in our negro section. And gentlemen, it is far more serious proposition that it may appear to you on its face.

" 'Ninety per cent of every tax dollar that is spent in law enforcement in this County is because of the crimes that are committed by negroes. At this term of Court we have got nine murder cases to try and eight of them are negroes,' is an appeal to race prejudice, and prejudicial to the defendant." The transcript of the record shows that the State's Attorney, during the course of his argument to the jury, made the following statement:

"Now, whether you recommend mercy or don't recommend mercy, if you convict him of first degree murder, is no concern of mine. That is your prerogative, and you can recommend it or not recommend it as you see fit. But, gentlemen, while this is just another negro killing, it is important to the State of Florida, it is important to you jurors having taken your oath as a juror, it is important to you as citizens of this County, because it is your tax dollars

that are being spent to try to keep some semblance of law and order out here in our negro section. And, gentlemen, it is a far more serious proposition than it may appear to you on its face.

"Ninety per cent of every tax dollar that is spent in law enforcement in this County is because of the crimes that are committed by negroes. At this term of Court we have got nine murder cases to try and eight of them are negroes.

"While we have been trying cases this week in this court room there have been committed three more homicides that are now waiting for the grand jury to be convened so that they can investigate them and either indict them or else find a no true bill and turn them loose. My office has to investigate more than 200 homicides every year.

"Gentlemen, do you realize that here in Dade County there are more homicides, more murders, committed in this small county—and it is small compared to some of the other populous counties of this country and to some of the other large cities of the world,—but here in Dade County alone we have more homicides every year than in all of England, Ireland and Scotland combined?

"Now, I don't know why it is that this Country of ours appears to be such a lawless country and why we have more crimes than they do in the other countries of the world. I am satisfied with my own Country, and I would rather be here where we have the crime than over there where they have revolution and the Bolsheviks and the Communists and the Fascism. I believe I would rather take my chances with the criminal than any one of them. But it is our duty, gentlemen, if we can, to carry on the ceaseless war that we do against the great army of criminal that are at work in our country today.

"Gentlemen, do you realize that there are at present in this county and in this country, and statistics show it, an

army of more than 3,500,000 convicted criminals that are walking our streets, people that have been convicted of criminal offenses? It is hard to conceive, if they were properly organized, what an army that would be, if they marched by this Court House. They might walk by four abreast and would walk throughout all the day and throughout all of the night and throughout all of the next day and still the tail end of that procession would not have passed you.

'It is a serious thing. There are nearly 12,000 homicides committed in this country every year. Before you return your verdict in this case there will have been several citizens of this country who will be stiffening out cold in death at the hands of some assassin, some maybe here, or it may be in New York or it may be in Chicago or some other place. When we look at the statistics of crime in this country, gentlemen, it is appalling, and I am calling this to your attention so that you will consider this case in its true light as an offense against the sovereignty of our State, lest you forget it is just another negro killing of another negro."

The record does not show that any objection was made to the argument or that the court was requested to instruct the jury that they should not consider such argument. However, that it was an improper appeal can not be questioned.

In Henderson v. State, 94 Fla. 318, 113 Sou. 689, Mr. Justice BROWN, writing the opinion for the Court, said:

"While it is the duty of the trial judge, whether requested or not, to check improper remarks of counsel to the jury, and to seek by proper instructions to the jury to remove any prejudical effect they may be calculated to have against the opposite party, the general rule is that a verdict will not be set aside by an appellate court because of such remarks or because of any omission of the judge to perform his duty in the matter, unless objection was made at the time of their

utterance and a ruling of the court secured thereon, and an exception to such ruling duly taken. Graham v. State, 72 Fla. 510, 73 Sou. 594, and cases cited; Akin v. State, 86 Fla. 564, 98 Sou. 609; 16 C. J. 914. This rule is, however, subject to the exception that if the improper remarks are so obviously prejudical and of such a character 'that neither rebuke nor retraction may entirely destroy their sinister influence,' a new trial should be awarded regardless of the want of objection or exception. Akin v. State, *supra;* 16 C. J. 914."

In Akin v. State, 86 Fla. 564, 98 Sou. 609, we held: "It is the duty of the trial judge, whether requested or not, to check improper remarks of counsel to the jury, and to seek by proper instructions to the jury to remove any prejudical effect they may be calculated to have against the opposite party, a verdict will not be set aside by an Appellate Court because of such remarks or because of any omission of the judge to perform his duty in the matter, unless objection be made at the time of their utterance. This rule is subject to the exception that *if the improper remarks are of such character that neither rebuke nor retraction may entirely destroy their sinister influence, in which event a new trial should be awarded regardless of the want of objection or exception.*" (Emphasis supplied)

A case directly in point is that of State v. Brown, 128 La. 337, 86 Sou. 912. In that case the Court said:

"The remarks of the district attorney complained of are as follows:

" 'Gentlemen of the Jury, it is high time to put a stop to these murders by negro women, by hanging some of them. You, gentlemen, know that every jury term of this court we have one or more negro women up here for murder, and the only way to put a stop to it is to bring in a verdict of guilty as charged and have a hanging. In my whole ex-

perience as district attorney for the past eight years, I have never prosecuted a clearer case of willful murder than this one.'

"When objection was made on behalf of the defendant to the foregoing remarks, the judge did not direct the jury to disregard any portion of those remarks. He says in his per curiam to the bill that he cautioned the district attorney to keep within the record and state nothing that he could not draw as an inference from the testimony. And in charging the jury he instructed them to confine themselves strictly to the evidence heard upon the trial of the case and upon the law as given them by the court, and not to allow any outside influence to enter into their consideration in making up their verdict.

"The remarks of the district attorney had clear reference to other matters than those in the record in this case; and it was an appeal to the prejudices of a jury composed of white men against the negro race. The caution to the district attorney to keep within the record was not sufficient to do away with the effect which the remarks called forth; and they must have been harmful in their effects to the cause of the defendant."

See also Fouts v. State, 101 Fla. 1248, 133 Sou. 81.

In McCall v. State, 120 Fla. 707, 163 Sou. 38, we said:

"Now, it is true that the trial judge did what he could to correct the improper arguments presented, but it occurs to us that he 'locked the stable after the horse was gone.' The harm had been done."

AND, further in that case, we said·

"In Berger v. United States of America, 79 Law Ed. 667, Supreme Court of the United States advance sheet, April 15, 1935, the Supreme Court of the United States, speaking through Mr. Justice Sutherland, said:

" 'The United States Attorney is the representative not of

any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

" 'It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.'

"He cites People v. Malkin, 250 N. Y. 185, text 201-202; People v. Sesposito, 234 N. Y. 370, text 375-377; Johnson v. U. S., 215 Fed. 679, text 685; Cook v. Commonwealth, 86 Ky. 663; text 665-667; Gale v. People, 26 Mich. 157; People v. Wells, 100 Cal. 459. See also People v. Bowers, 79 Cal. 415, 21 Pac. 752.

"The rule appears to be that when a prosecuting attorney has indulged in improper argument the question is whether or not the court can see from the record that the conduct of the prosecuting attorney did not prejudice the accused and unless this conclusion can be reached, the judgment must be reversed."

We must hold that the remarks which the bill of exceptions shows were made by the States Attorney, herein above

quoted, were patently prejudical to the defendant and that they were calculated to arouse race prejudice and to improperly influence the jury.

For this reason, the judgment must be reversed and the cause remanded for a new trial.

So ordered.

TERRELL, C. J., and WHITFIELD and CHAPMAN, J. J., concur.

BROWN and THOMAS, J. J., dissent in part.

BROWN, J. (dissenting in part)—I concur with the majority of the Court in holding that the first two paragraphs of the quoted portion of the State Attorney's argument to the jury, which were not objected to by defendant when made, are subject to some criticism. I do not, however, think it was the intention of the State Attorney to make an appeal to racial prejudice, and I am not at all convinced that it was or could have been, so considered by the jury. It must be remembered that both the defendant and the deceased were of the same race. The first complaint that was made of the above mentioned portion of the State Attorney's argument was in the motion for new trial.

Furthermore, it should be noted that these statements of the State Attorney were made in discussing the proposition as to whether or not the jury should recommend mercy, provided they should find the defendant guilty of murder in the first degree. This argument was not made with reference to the guilt or innocence of the defendant.

In the same case cited in the majority opinion, Henderson v. State, 94 Fla. 318, 113 Sq. 689, it was also said:

"We realize that the situation in some cases justifies very strong appeals by the prosecuting attorney to arouse the patriotism and sense of public duty of the jurors to perform the duty which the law and the evidence in a case plainly justifies and calls for.

"The welfare of society and the safety and security of the great body of law abiding citizenry can only be maintained by the just and courageous enforcement of the laws of the land, and all legitimate argument and full exercise of the greatest forensic talents of our public prosecutors' are sometimes necessary to be directed to that end, and their fair and proper use should be permitted and encouraged rather than cramped or denied. But such arguments are all the more telling and effective when kept within proper bounds."

The defendant was found by the jury to be guilty of murder in the second degree only. I do not think any reversible error was committed by the trial court in not voluntarily instructing the jury to disregard that part of the State Attorney's argument set forth in the majority opinion, especially in view of the fact that counsel for defendant interposed no objection whatever thereto, at the time, which he could doubtless have done if he had considered the argument improper or prejudicial.

I think, therefore, that the judgment below should be affirmed.