194 So.2d 612 (1967)
Alfreddie GRANT, Appellant,
v.
The STATE of Florida, Appellee.
No. 34711.
Supreme Court of Florida.
February 1, 1967.
W.A. Drury, Jasper, for appellant.
*613 Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
DREW, Justice.
On this appeal from a verdict of guilt without a recommendation of mercy and a judgment sentencing appellant to death, we find reversible error to have occurred when, in his closing argument to the jury, the state's attorney said: "Do you want to give this man less than first degree murder and the electric chair and have him get out and come back and kill somebody else, maybe you?"[1]
Inasmuch as this cause must be reversed and remanded for a new trial, it is unnecessary for us to discuss or decide the other points presented for our consideration.[2]
In Washington v. State (1923), 86 Fla. 533, 542-543, 98 So. 605, 609, this Court, speaking through the late Mr. Justice Terrell, very appropriately observed:
"* * * The prosecuting attorney occupies a semijudicial position. He is a sworn officer of the government, with no greater duty imposed on him than to preserve intact all the great sanctions and traditions of the law. It matters not how guilty a defendant in his opinion may be, it is his duty under oath to see that no conviction takes place except in strict conformity to law. His primary considerations should be to develop the facts and the evidence for the guidance of the court and jury, and not to consider himself merely as attorney of record for the state, struggling for a verdict. * * *
"Any attempt to pervert or misstate the evidence or to influence the jury by the statement of facts or conditions not supported by the evidence should be rebuked by the trial court, and, if by such misconduct a verdict was influenced, a new trial should be granted."
*614 In Stewart v. State (Fla. 1951), 51 So.2d 494, Mr. Justice Terrell, in discussing the prejudicial nature of the following remarks made by a state's attorney, viz: "`The time to stop a sexual fiend and maniac is in the beginning and not to wait until after some poor little child or some little girl lost her life * * * or mutilated'" said:
"This Court has so many times condemned pronouncements of this character in the prosecution of criminal cases that the law against it would seem to be so commonplace that any layman would be familiar with and observe it. We have not only held that it is the duty of counsel to refrain from inflammatory and abusive argument but that it is the duty of the trial court on his own motion to restrain and rebuke counsel from indulging in such argument. The pronouncement complained of was a pure gratuity without any basis in the record for it. The Supreme Court of the United States and the Courts of last resort throughout the country have condemned this kind of prosecution. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629-633, 79 L.Ed. 1314, decided April 15, 1935; Smith v. State, 147 Fla. 191, 3 So.2d 516; Smith v. State, 101 Fla. 1066, 132 So. 840; Oglesby v. State, 156 Fla. 481, 23 So.2d 558; Deas v. State, 119 Fla. 839, 161 So. 729; Livingston v. State, 140 Fla. 749, 192 So. 327 and many others."
A very similar situation was dealt with by us in Singer v. State, note 1 supra, 109 So.2d at page 27. There the state's attorney told the jury:
"`* * * What am I thinking? Mercy is granted. You become soft, you become sympathetic. He is sent to the penitentiary. What am I going to think? What is my family going to think? What are these back here going to think? What am I going to think?
"`I have been your prosecutor for almost 19 years, and for three years prior to that I had the privilege and the honor of the same position that Osee had. Are you by your verdict, gentlemen, going to say to the prosecutors in this Nation that they have no protection for performing their duty? There's only one sure way! That penitentiary is not absolute inviolate. A life sentence doesn't mean a life sentence. It isn't literal.'
"Defense counsel objected to the italicized portion of the above copied statement. His objection was sustained and the jury instructed to disregard the statement.
"The State Attorney continued:
"`Gentlemen, I say to you again the penitentiary at Raiford is not inviolate.'"
And, again, in Pait v. State, note 1 supra, 112 So.2d at pages 383-384, the questioned remarks were:
"`The state of Florida also provides this defendant with the only right of appeal. The People of the State have no right to appeal. This is the last time the People of this State will try this case in this court. Because whatever you do, the People have no right of appeal. They are done. This is their day. But he may have another day; he has an appeal. So those are the rights that the State of Florida gives to him, that intangible object.'
"Following close on the above quoted remarks, the State Attorney then went on to advise the jury as follows:
"`Before each murder trial that is prosecuted in this circuit, where I'm the State Attorney, a conference is held between me and my assistants to determine whether or not the facts in the case justify the State's giving maximum punishment under the law.
"`I told you at the outset of this trial that if the facts in this case warranted this defendant being sent to the electric chair * * *.'"
In the Singer and Pait cases we were concerned with the prejudicial nature of *615 the quoted remarks when considered in the light of the possible effect of such remarks on a recommendation of mercy by the jury. In each instance we reversed and held such remarks were unwarranted, prejudicial and could well have been the reason why the penalty in those cases was death instead of life imprisonment  assuredly a major difference so far as the defendant is concerned. We emphasized in both cases the requirement of the law that every defendant has the right to have the question of mercy determined in a fair and impartial manner, free from prejudicial and inflammatory statements.
The remarks of the state's attorney in this case were clearly and obviously made for the purpose of influencing the jury to impose the death penalty. There is no conceivable basis in the record upon which such remarks could be predicated. They were highly prejudicial and inflammatory for they conveyed to the jury the thought  and the suggestion  that if they did not impose the death penalty this defendant would probably escape or be pardoned and come back to the community and kill them, the jury.[3] Paraphrased, the remarks were "If you do not electrocute this defendant, this man may come back here and kill all of you." Such remarks were infinitely more prejudicial than those in any of the cases cited and were assuredly of the character that this Court condemned in Washington v. State, supra, and that other courts have universally condemned when presented on review.[4]
In the State's brief on this question, it seems to take the position that this Court in the recent case of Collins v. State (Fla. 1965), 180 So.2d 340, 343, receded from the cases discussed herein which we hold require a reversal of this judgment. No such conclusion is warranted for the very reasons stated in that opinion. There we specifically said:
"We do not recede from any of our prior pronouncements upon the duty of prosecutors to stay within the realm of proper argument. And needless to say, if the question here had been completed `in an improper manner,' we would, by definition, declare the question `improper' and reverse. This, however, is not the case."
Were we to fail to reverse this case on this record, it would be a tacit approval by this the highest court of this State  the supreme arbiter in most cases involving the imposition of the death penalty  of the remarks made by the state's attorney and would be clear authority to every other state's attorney in this State to use the same language in every case charging murder in the first degree.
The State has undoubtedly spent thousands of dollars and hundreds of hours have been devoted by state officials and others in the investigation and prosecution of this appellant. Now, as in an increasing number of cases reaching us in recent years, we must undo all of that which has been done and send this case back for a new trial. To some it might appear to be straining at technicalities to reverse this case in which literally thousands of words were spoken for the mere utterance of 30 words, but this result is required not by the whims or individual feelings of the Justices of this Court but because the law which we, and those others who exercised the State's sovereign power in the trial and prosecution, are sworn to uphold has been patently disregarded. The rules which govern the trial of persons accused of crime in our courts are the result of hundreds of years of experience. With their manifold faults, *616 they have proven to be man's best protection against injustice by man. Many a winning touchdown has been called back and nullified because someone on the offensive team violated a rule by which the game was to be played. The test in such case is not whether the infraction actually contributed to the success of the play but rather whether it might have. Surely where life is at stake, the penalty cannot be less severe.
There is little justification for errors of the nature we are concerned with in this and in too many similar cases. All may be eliminated by a scrupulous adherence to the proscriptions of the law and precedent by those who exercise the great sovereign power of the State. Those of us who are sworn to serve the law should be the last to disobey or ignore it.
Reversed and remanded for a new trial.
THORNAL, C.J., and THOMAS, O'CONNELL, CALDWELL and ERVIN, JJ., concur.
ROBERTS, J., dissents with Opinion.
ROBERTS, Justice (dissenting):
I would affirm the judgment of the lower court.
NOTES
[1] The questioned remarks were not objected to when made. At the conclusion of the final arguments the record shows the following occurrence:

"After said recess the arguments of counsel commenced. After the argument for the State, the following proceedings were had:
By Mr. Drury:
Comes now the defendant, by his undersigned attorney, at the end of the State Attorney's closing argument and moves this Court to enter an Order directing a mistrial in this cause and as grounds therefor alleges: That in the final remarks of the State attorney's final argument, the State attorney made a statement to the jury to the effect, `Do you want to give this man less than first degree murder and the electric chair and have him get out and come back and kill somebody, maybe you.' That this remark is so prejudicial to the Defendant that the same could not be cured by any instruction of the Court.
By the Court:
The motion is denied."
This fact, however, does not prevent appellate review. In Pait v. State (Fla. 1959), 112 So.2d 380, 385, the following language appears:
"* * * However, when an improper remark to the jury can be said to be so prejudicial to the rights of an accused that neither rebuke nor retraction could eradicate its evil influence, then it may be considered as ground for reversal despite the absence of an objection below, or even in the presence of a rebuke by the trial judge. Florida Appellate Rules 3.7(i) and 6.11, subd. a, 31 F.S.A. Cooper v. State, 136 Fla. 23, 186 So. 230; McCall v. State, 120 Fla. 707, 163 So. 38; Simmons v. State, 139 Fla. 645, 190 So. 756; Carlile v. State, supra [129 Fla. 860, 176 So. 862]."
See also Singer v. State (Fla. 1959), 109 So.2d 7.
[2] None of the remaining points present questions that would likely recur in a subsequent trial except those relating to the sufficiency of the evidence to support the verdict. In view of our decision to reverse on the ground stated, we specifically decline to pass on these questions at this time.
[3] See Burnette v. State (Fla. 1963), 157 So.2d 65, relating to whether a jury should consider the question of pardon and parole in connection with its consideration of the question of granting mercy in murder cases.
[4] See cases cited in Stewart v. State, quoted in opinion. Also see Coley v. State (Fla. 1966), 185 So.2d 472, concerning similar remarks made by a judge to the jury in his examination of the jury panel as to their qualifications.