No. 22089.

Martin S. Martinez *v*. The People of the State of Colorado.
(425 P.2d 299)

Decided March 20, 1967.     Rehearing denied April 10, 1967.

196

J. Bayard Young, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Aurel M. Kelly, Special Assistant, for defendant in error.

*En Banc.*

Opinion by Mr. Justice McWilliams.

MARTINEZ and Swazo were jointly charged with the crimes of burglary and conspiracy. Upon trial each was convicted on both counts, and thereafter each was sentenced to a term in the state penitentiary. By this particular writ of error Martinez alone seeks reversal of his conviction, though Swazo is seeking review of his conviction by separate writ of error.

Martinez contends that his conviction should be reversed on any one of several grounds. In order to better understand his position it is deemed advisable to outline some of the incriminating evidence adduced by the People upon trial.

About dusk on a summer's evening police officers Laurita and McMillan, who were at the time driving in a marked police car, noticed a pickup truck being driven in a careless manner down an alley. It was for this reason alone that the two officers decided to follow the aforementioned truck. While following this truck, the officers noticed that a rather bulky object was thrown out of the window on the passenger's side of the truck. Shortly thereafter, with the aid of their red light and siren, the officers succeeded in stopping the truck.

Officer Laurita approached the stopped truck on the driver's side, and ordered the driver to get out of the truck. The driver was Swazo.

Officer McMillan approached the truck on the passenger side. This officer testified that through the open window he noted that the passenger had certain objects in his hands which he was apparently attempting to secrete under the seat of the vehicle. McMillan ordered the passenger out of the car, and the passenger turned out to be Martinez.

As Martinez stood by the opened right door of the truck, officer McMillan espied a brand new wallet and a brand new pair of gloves lying on the floor of the truck cab. Officer McMillan picked up these two items and took them, and Martinez, back to the patrol car.

While seated in the police car, a call came over the police radio informing the officers, as well as Swazo and Martinez, that there had just been received a report of the burglary of a home located only a few blocks from where the Swazo driven vehicle had been stopped. The four thereupon drove immediately to the scene of this burglary.

Investigation disclosed that there had just been a forcible entry of the house in question, and the occupant testified that in his absence his home had been ransacked. Missing, the home owner testified, were a new wallet and new pair of gloves, and he identified the wallet and gloves taken from the pickup truck as similar in appearance to his.

Also taken in the burglary was a "piggy" bank with about $15 in coins in it. The day after the burglary, the police searched by daylight the alleyway in which Swazo and Martinez had been stopped on the previous evening. On this occasion the aforementioned missing "piggy" bank was located. Upon trial the victim identified the piggy bank as the one taken from his home. In connection with this bank, a fingerprint expert also testified upon trial that he found a fingerprint thereon which matched one of Martinez' fingerprints.

■ It is against this evidentiary backdrop that Martinez claims for a variety of reasons his conviction should be reversed. Initially he contends that the victim of the burglary did not identify his property with sufficient certainty. In our view this particular assignment is without merit. In this regard the instant case is not controlled by *Lombardi v. People*, 124 Colo. 284, 236 P.2d 113, as is suggested by counsel, but on the contrary is governed by *Pena v. People*, 147 Colo. 253, 363 P.2d 672.

■ Secondly, Martinez argues that any "possession" by him of "recently stolen goods" was not "exclusive," as he was only a passenger in the truck being driven by Swazo. As concerns the particular point, it is suf-

ficent to observe that in *Gonzales v. People*, 128 Colo. 522, 264 P.2d 508 we held that there could be "exclusive" possession of marijuana by two persons. So, in the instant case, Swazo and Martinez had the exclusive possession of the wallet, gloves, and piggy bank, even though theirs was a joint possession of the above mentioned articles.

Thirdly, it is argued that the wallet, gloves and piggy bank were all the fruits of an unlawful search and seizure. We do not so view the matter. There was no search, as such, for either the wallet or the gloves, as each was on the floor in plain sight of all concerned. Certainly this particular factual situation, if not on all fours, is nonetheless very akin to that of *Alire v. People*, 157 Colo. 103, 402 P.2d 610. And any "seizure" of the wallet and gloves under the circumstances did not actually occur until after Martinez was arrested upon probable cause for burglary. Under these circumstances the seizure was quite proper.

As already noted, the police officers on the day following the burglary found the piggy bank in the public alley where it had obviously been thrown by Martinez during the previous evening. As regards the piggy bank, certainly Martinez' constitutional right to be free from unreasonable search and seizure does not require the police officer to obtain a search warrant before searching a public alley!

Finally, Martinez complains about the closing argument of the district attorney. In this regard it is asserted that the district attorney violated the mandate of *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed2d 106, by indirectly alluding to the failure of Martinez to take the witness stand and testify in his own behalf. In this same general connection, Martinez also makes minor complaint about the instruction given by the trial court concerning exclusive, recent and unexplained possession of stolen property. Though the par-

ticular instruction may not be ideal, we nonetheless hold that it comes within the rule as set forth in *Ciccarelli v. People*, 147 Colo. 413, 364 P.2d 368, and is not of the type condemned in *Russell v. People*, 125 Colo. 290, 242 P.2d 610.

In his closing argument the district attorney did characterize the People's evidence as being "uncontradicted." This was literally true, inasmuch as neither Martinez nor Swazo called any witnesses in their behalf. But to us the present situation is quite dissimilar from that found in *Griffin v. California, supra.*

■ In *State v. Acosta*, 101 Ariz. 127, 416 P.2d 560, the Supreme Court of Arizona had occasion to consider in some detail the problem created by the assertion of a district attorney in closing argument that his evidence is uncontroverted. After recognizing that any direct, or even indirect, statement concerning a defendant's failure to .testify in a criminal proceeding may well constitute reversible error, that court went on to state that the "true test" is whether the comment, in context, was calculated or intended to direct the attention of the jury to the defendant's neglect or failure to exercise his right to testify in his own behalf.

■ Applying that test, we conclude that the statements here complained of were not calculated to point up, nor did they in fact point out, that Martinez had failed to testify in his own behalf. On the contrary they were only intended as general comment on the fact that the evidence adduced by the People was uncontradicted. The argument of the district attorney, when viewed in context, was only intended to convey to the jury the idea that, in the opinion of the district attorney, his evidence, being corroborated and uncontradicted, was amply sufficient to justify a guilty verdict. And, of course, the jury was expressly instructed in the words of the statute that the failure of Martinez to testify was not any evidence of his guilt. C.R.S. 1963, 39-7-15.

Under all these circumstances, we perceive no error in this regard.

The judgment is affirmed.