## No. 24636

## Kathy Marie Meader v.
## The People of the State of Colorado
(497 P.2d 1010)

Decided June 5, 1972.

Douglass F. Primavera, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Kathy Marie Meader was convicted by a jury in the district court of Clear Creek County of vehicular homicide in violation of 1965 Perm. Supp., C.R.S. 1963, 13-5-155. She brings error to reverse the judgment of conviction. We affirm.

The charge arose out of a one-car accident which occurred on Interstate 70, approximately one mile east of Idaho Springs, in the early morning of March 22, 1969. Defendant was operating the car at the time of the accident and was accompanied by Barry Blevins, who occupied the passenger side of the front seat, and Narland Small, who was riding in the rear seat of the automobile. Mr. Small died as a result of this accident. The record shows that defendant, her passengers, and three other persons were having a party at a mountain cabin located in the hills above Dumont, Colorado. During the course of this gathering, considerable intoxicating liquor was consumed. The evidence showed that the defendant had from two to three drinks of hard liquor. The party left the cabin premises to return to Denver in two separate cars. The defendant was driving the first car, which was a Ford Falcon. The record shows that the defendant proceeded down the unpaved canyon roadway toward Dumont at speeds estimated between sixty and seventy miles per hour. Upon reaching I-70 at Dumont, the cars proceeded easterly toward Denver. The defendant's car soon outdistanced the trailing second car and was lost from view.

The record shows that a short distance east of Idaho Springs I-70 enters twin tunnels. Defendant emerged from the eastbound tunnel at a high rate of speed. At this point,

the easterly lane of I-70 makes a broad curve from right to left, at which the maximum permitted speed limit is fifty miles per hour. The investigating officer testified that he found skid marks on the roadway, indicating that as defendant's car started into the curve it left the paved surface and skidded down the shoulder of the road for a distance of approximately 161 feet and then came back onto the paved surface of the roadway where the skid marks continued for approximately 132 feet to a point where the car again left the paved surface of the roadway and slammed into the guardrail. It proceeded approximately 72 feet to a point where it again struck the guardrail and apparently rode the top of the guardrail for an additional fifty feet, eventually bouncing over the guardrail and rolling a distance of 67 feet down the rock embankment into Clear Creek where it landed on its top, facing upstream. The various skid marks and damage to the guardrail indicated that the automobile was out of control for a distance of 482 feet.

Mr. Small was thrown from the back seat of the automobile and his body crushed as the vehicle bounced down the rocky bank into the river.

Witnesses to the accident, who were proceeding westerly in the westbound lane of I-70, testified that they observed the car skidding down the highway in an upright position on the vehicle's radiator for a considerable distance. The vehicle was described as proceeding at a high rate of speed, although they could not give an opinion as to the speed at the time they observed it.

The investigating officer was permitted to testify, over objection of defendant, that in his opinion defendant's vehicle was traveling between eighty and eight-five miles per hour at the time of the accident. As a part of the foundation laid for permitting this opinion of speed to be given, he testified that he had driven that stretch of highway at a maximum speed of seventy miles per hour. This he considered to be the top speed he could drive his patrol car through this curve in the highway. Any faster speed would result in loss of control of his patrol car.

Defendant chose not to testify in her own behalf and presented no evidence whatsoever to rebut the People's case.

I.

Defendant first argues that the trial court erred, in allowing the death certificate of Narland Small into evidence, for two reasons: first, C.R.S. 1963, 52-1-16, which permits the use of death certificates to establish prima facie evidence of the facts contained therein, applies only to civil actions; and, second, the death certificate contained hearsay evidence, thus depriving defendant of the right to cross-examine the author of the certificate. As to the first argument, Crim. P. 27 provides that an official record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions. This rule was in effect at the time of the trial of this action and thus permitted the use of the death certificate for the purpose of establishing the facts therein contained. *Orth v. Baur,* 163 Colo. 136, 429 P.2d 279.

The second argument relates to an alleged hearsay phrase contained in the death certificate. The death certificate shows the cause of death to be cerebral hemorrhage due to compound skull fractures due to or as a consequence of *crushing beneath car.* It is the latter phrase — crushing beneath car — to which defendant objected. Although it would have been better to have deleted this phrase from the death certificate before it was admitted into evidence, no request on the part of the defendant was made to do so. The record shows no issue was raised by the defendant as to the cause of Small's death and it is clear that Small was a passenger in the vehicle from which he was thrown, and as a consequence was killed. We find no prejudicial error in these circumstances.

II.

Defendant contends that the court erred in admitting exhibits 7 and 8, which were photographs taken of the automobile involved in the accident. These photographs were taken of the car after it had been removed from Clear Creek and towed to a nearby filling station. These exhibits showed

extensive damage to the front end and rear of the automobile. A proper foundation was laid, showing that the automobile was in the same condition at the filling station as it was when resting upside down in the middle of Clear Creek. It is fundamental that photographs are admissible to depict facts which are relevant to the issues of the case. *Gass v. People,* 177 Colo. 232, 493 P.2d 654; *Young v. People,* 175 Colo. 461, 488 P.2d 567; *Lanford. v. People,* 159 Colo. 36, 409 P.2d 829. Here, the photographs were relevant to the critical issue of the charge of recklessness, as made in the information. We find no error in their admission.

III.

Next, it is contended that the court erred in permitting the investigating patrol officer to give his opinion as to the speed of defendant's vehicle at the time of the accident. The record shows that an extensive foundation was preliminarily established by the officer, upon which the court ruled he might base an opinion concerning the speed of the automobile involved. The record shows that the officer had been a Colorado state patrolman for nine and one-half years, during which his employment consisted of enforcing traffic laws and investigating accidents. He has received special training and schooling concerning accident investigations and in making evaluations of automobile speed from skid marks and physical damage to automobiles caused by accidents. Subsequent to his initial employment, he received additional instruction in this area and he was required to attend school one week each year for a refresher course in the technique of accident investigation. He had had numerous occasions to examine damaged vehicles and to evaluate skid marks and to ascertain approximate speeds of vehicles involved in accidents. As hereinabove noted, he testified he had driven this particular curve at a maximum rate of seventy miles per hour, beyond which it was his belief loss of control of an automobile would occur. He was the chief investigating officer of the accident. He examined the road conditions, the road surface, the skid marks, the damages to the guardrail, and damages to the automobile. In view of his training,

experience and on-the-scene investigation of the physical facts involved in the accident, we cannot say that the trial court abused its discretion in permitting the officer to express his opinion concerning the speed of the vehicle at the time of the accident. *Hampton v. People,* 171 Colo. 153, 465 P.2d 394; *Ferguson v. Hurford,* 132 Colo. 507, 290 P.2d 229. The weight to be accorded his opinion was solely a question for the jury. We find no error in admitting this testimony.

## IV.

The defendant's final argument relates to alleged improper remarks by the district attorney during his closing argument.

■ First of all, we note, with one exception, that defendant did not make any contemporaneous objection to the alleged prejudicial remarks during the course of the argument. We have carefully considered the particular statements which defendant contends prejudicially called to the jury's attention her failure to testify in her own behalf. We do not agree with this contention and do not find any remarks by the district attorney which, considered in their proper context, were calculated or intended, either directly or indirectly, to direct the jury's attention to the defendant's exercise of her right not to testify. *Martinez v. People,* 162 Colo. 195, 425 P.2d 299. *See also, Montoya v. People,* 169 Colo. 428, 457 P.2d 397. As we view the particular remarks being considered, it is apparent they were intended to call the jury's attention to the fact that the evidence as presented was sufficient to justify a guilt verdict. *Martinez v. People, supra.*

■ Defendant did object during closing argument to the district attorney's zealous exhortation that the jury perform its duty and find the defendant guilty under the evidence submitted to it. This objection was overruled. We find no abuse of discretion in this ruling.

■ It is not our function to direct district attorneys in prosecution techniques. However, we note that often times overprosecution can create serious problems on review, to the detriment of the People. In this case, however, we find no such overprosecution.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON dissenting.

MR. JUSTICE ERICKSON dissenting.

I respectfully dissent.

The district attorney was overzealous in his effort to obtain a conviction, and his comments in the course of his closing argument violate the clear mandate of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *accord, Desmond v. United States,* 345 F.2d 225 (1st Cir. 1965). On no less than four occasions, the prosecutor focused the jury's attention on the defendant's failure to take the stand. He pointed out to the jury that the People alone had presented the facts. He then added that the People didn't make the facts, but the defendant did, and that the defendant sits before the jury with that burden on her mind. He also told the jury that there was not one other thread of evidence except that which the People had offered. He then went on to say that they had heard nothing about the defendant and her failure to accept responsibility for her acts. Thereafter, he pointed out that there was no evidence except that which the People had produced. Even then, he was not satisfied that the jury was convinced of the defendant's guilt, so he exhorted the jury to convict to stop the type of conduct that was highlighted by the evidence during the trial.

The district attorney's comments violated the test which we laid down in *Martinez v. People,* 162 Colo. 195, 425 P.2d 299 (1967). In *Martinez, supra,* we said, in determining whether a prosecutor's conduct violated the *Griffin* rule, that the test was whether the comment in context was calculated or intended to direct the attention of the jury to the defendant's exercise of her right not to testify. *See also, Montoya v. People,* 169 Colo. 428, 457 P.2d 397 (1969). The district attorney's comments went beyond the limitations of fair comment, and his remarks that urged that a conviction be returned to stop conduct of the type that was being gauged by the jury denied the defendant a fair trial. *Cooper*

*v. State,* 136 Fla. 23, 186 So. 230 (1939); *People v. Sawhill,* 299 Ill. 393, 132 N.E. 477 (1921). *See also,* Annot., 85 A.L.R.2d 1132 (1955); 6 Am. Jur. Trials, "Prosecution Summations," 873, 897; *American Bar Association Standards of Criminal Justice Relating to The Prosecution Function,* § 5.8.

For the reasons stated, I would reverse.

MR. JUSTICE DAY joins me in my dissent.