No. 25477

**The People of the State of Colorado v.
Cyrus Jennings Burress, III, a/k/a Cy J. Burress, III**
(515 P.2d 460)

Decided October 29, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Laurence A. Ardell, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal attacks the conviction and sentence which was imposed after a jury found the defendant, Cyrus Jennings Burress, III, guilty of assault with a deadly weapon. C.R.S. 1963, 40-2-34. A number of issues have been raised on appeal. However, our resolution of the issues relating to the admission of evidence and prosecutorial misconduct requires that the defendant be granted a new trial and eliminates the necessity of our addressing the remaining issues.

It is uncontroverted that the defendant stabbed George Smith twice and severely injured him on February 14, 1971. Trial testimony established that Burress and Smith had been previously involved in a number of hostile and even violent confrontations.

During the night in issue, George Smith and his friend, James Panariso, spent the evening drinking in various bars in the downtown Pueblo area and ended up at the Ramada Inn. At approximately 2:00 a.m., as they were leaving the Ramada Inn, Panariso drove his car out of the parking lot and nearly collided with a car driven by Burress. Burress testified that the Panariso car pulled out directly in front of him and that he had to swerve to avoid a collision. After the near-collision between the two cars, Panariso and Smith decided to follow the Burress car. Thereafter, on several occasions while Burress was enroute home, Panariso attempted to run him off the road with his car. When Burress reached

his home, the Panariso car was still right behind him. Burress parked his car in the driveway of his home. As soon as the Panariso car stopped, Smith jumped out and ran over to Burress' car. According to Burress, Smith hit him in the head before he could get out of the car. The defendant testified that before he could do anything, Smith also knocked his glasses off, dragged him from the car, and knocked him down. The defendant's testimony also established that Smith, who is 22 years old, 6' 5" tall, and weighs 280 pounds, continued to strike him about the head and body after he had been knocked down. Panariso also joined the fray, and at some point, the defendant struggled to his feet, obtained a knife from his car, and stabbed Smith twice. He was then able to escape from Panariso and Smith and ran into his house. Smith and Panariso pursued the defendant and attempted to kick in the front door of the defendant's home. Burress called the police. Before the police arrived, however, Panariso drove Smith to the hospital. A police investigation followed, and charges were subsequently filed against Burress.

The evidence presented at the trial was in conflict, and Smith's testimony relating to the fight at the Burress home directly contradicted the defendant's testimony. According to Smith, Burress viciously attacked and stabbed him without any physical provocation whatsoever. Panariso corroborated Smith in part, but said that he was unable to see the actual assault. The physical evidence, on the other hand, tends to support the Burress testimony. Panariso and Smith admitted that they attempted to batter down the door of the Burress home after the stabbing occurred, but contended that they were not pursuing Burress at that time, but were merely seeking medical assistance.

## I.
### Evidence Relating to State of Mind

The defense theory of the case was self-defense. Burress claimed that he was aware of Smith's violent character and feared for his life every time Smith threatened him. Accordingly, defense counsel attempted to introduce evidence to

establish the defendant's fear of Smith and his state of mind at the time he stabbed Smith. The evidence which the defendant sought to introduce would have established that approximately six months prior to the assault which is in issue, Smith and Burress were involved in a shouting match at a local drive-in restaurant. At that time, Smith wanted to settle the matter with his fists and said, "The only thing I want to do to you [Burress] is beat the hell out of you." A friend of Burress' intervened and averted the fight. After Smith left the room, the friend warned Burress that Smith was a very violent and dangerous person and should be avoided. He told Burress that Smith had viciously beat a uniformed police officer in Los Angeles and had been convicted for the assault approximately two and a half years before he came to Pueblo. The trial court ruled that the evidence was both hearsay and improper character impeachment evidence and, therefore, was inadmissible. We disagree.

It is true that the statements of Burress' friend concerning the assault on the Los Angeles Policeman are hearsay. However, the statements were not offered to prove that the attack actually occurred, but to provide a basis for the defendant's state of mind and his alleged fear of Smith. It has long been the law that when a hearsay statement is offered to provide the basis for a defendant's state of mind, the truth of the statement is not the criterion for admission, and the general hearsay prohibition does not apply. *Isbell v. People,* 158 Colo. 126, 405 P.2d 744 (1965). Therefore, the trial court erred in ruling that the offered evidence was inadmissible as hearsay.

As an alternate ground for excluding the testimony relating to the attack on the Los Angeles policeman, the judge ruled that an offer of proof relating to a specific violent act of a witness could not be used to impeach his credibility. Impeachment, according to the trial court, could only be accomplished by the production of evidence of Smith's general reputation in the community and not by specific acts of violence. Under the circumstances of this case, that ruling also was in error.

■ When the reputation and credibility of the victim of an assault is sought to be impeached, "the general rule is . . . that evidence as to such reputation must be confined to the community in which the [person] lives whose reputation is sought to be shown and limited to some reasonable time previous to . . . the time of the [present criminal act]." *Lynch v. People,* 33 Colo. 128, 79 P. 1015 (1905). However, the general rule does not apply if (1) the defendant contends that he acted in self-defense, and (2) at the time of the criminal act the defendant was aware of the victim's prior acts of violence upon a third person. *Bailey v. People,* 54 Colo. 337, 130 P. 832 (1913). *See also Ballay v. People,* 160 Colo. 309, 419 P.2d 446 (1966); *Holt v. State,* 170 Tenn. 76, 92 S.W.2d 397 (1936); 1 *Wigmore on Evidence,* 3d ed., § 198; 2 *Wigmore on Evidence,* 3d ed. § § 246 and 248. The reasons for the exception to the general rule are well set out in *Holt v. State, supra:*

"This exception to the general rule restricting character evidence to general reputation is supported by reason. When a case narrows to the inquiry as to the degree of reasonableness of the apprehension in the mind of the defendant when he finds himself in a position in which he must instantly determine when, or whether or not, to strike, and when it is conceded that it is permissible for his judgment to be affected by the character of his antagonist for violence, there would seem to be no escape from the further concession that his judgment would be even more directly affected by knowledge of recent specific unrestrained violence. All men well know that the average mind responds more readily to knowledge of specific conduct than to impressions based on general reputation . . . ."

■ However, before the exception applies, thereby allowing introduction of the evidence concerning the specific act of violence, the defendant must lay a proper foundation. The trial court is justified in excluding the specific act evidence until such time as the defendant establishes (1) that he was aware that the specific violent act took place, and (2) that either the act occurred or the defendant became aware of its

occurrence within a reasonable time of his use of force in self-defense. The record in this case reveals that Burress did lay a proper foundation for the introduction of the evidence.

The attorney general, however, although acknowledging the general rule, as well as the exception, argues that the victim's specific acts of violence in this case did not occur within a reasonable time prior to the assault. The attorney general contends that an act of violence by Smith which was committed three years prior to the assault in issue is too remote in time to justify application of the exception and admission of the reputation evidence. We cannot agree.

The function of the remoteness test is to provide guidance to the trial court in determining whether a specific act of violence by a victim of an assault could have created present apprehension or fear sufficient to justify the force used in the mind of a reasonable man. The reasonableness of that apprehension or fear is related not only to the remoteness in time of the victim's prior violent conduct, but also to the period of time that has expired since the defendant became aware of that conduct. Thus, the trial judge must consider both the time of the prior violent act and the time of its discovery in applying the remoteness test. If the trial judge concludes that the act or the discovery were too remote in time to create present apprehension or fear, then evidence of the victim's specific violent acts should be excluded. On the other hand, if the trial judge concludes that the proximity in time of either the specific act of violence or the discovery of that act could create present apprehension or fear on the part of the defendant, then the degree of that apprehension and the issue of whether the defendant's fear justifies the force which he used by way of self-defense is for the jury.

In this case, although there was a significant lapse of time between the victim's specific violent act and the stabbing, the defendant's tendered evidence established that he had only recently become aware of Smith's prior conduct. When Burress was pursued and attempts were made by Smith and Panariso to run his car off the road, followed by an attack by

Smith at the defendant's home, it is inconceivable to us that Burress would not take into account the recent warning which he was given about Smith's violent propensities. In light of all the circumstances referred to, including the recurring hostile confrontations and repeated threats against Burress by Smith, the trial court erred in refusing to admit the excluded evidence.

## II.
### Prosecutorial Misconduct

■ In the course of the trial, Burress took the stand in his own defense and testified freely as to the events surrounding the stabbing incident. The prosecutor, on cross-examination, developed the fact that Burress had not talked to the police. The implication which arose from the prosecutor's questioning was that the defendant refused to talk to the police. However, the record discloses that even though the police came to the Burress home to investigate the stabbing, the fact that Burress did not talk to them is the result of their failure to question him about the incident and not because he refused to talk. Therefore, the prosecutor's conduct constituted an effort to mislead the jury and cannot be condoned by this court.

■ Every person accused of a crime has the right to remain silent in the face of a criminal accusation. U.S. Const., amends. V and XIV; Colo. Const., art. II, § 18. Moreover, the prosecution cannot comment on or in any way use the silence of the accused as an instrument for inferring or suggesting guilt. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

In all too many cases, we have found that prosecutors have looked to the silence of the accused as a method of influencing the jury at one stage of a trial or another, and in each instance, we have been required to order that the defendant be granted a new trial. *People v. Robles,* 183 Colo. 4, 514 P.2d 630; *People v. Wright,* 182 Colo. 87, 511 P.2d 460 (1973); *People v. Mingo,* 181 Colo. 390, 509 P.2d 800 (1973); *Hines v. People,* 179 Colo. 4, 497 P.2d 1258 (1972);

*Meader, v. People,* 178 Colo. 383, 497 P.2d 1010 (1972); *Montoya v. People,* 169 Colo. 428, 457 P.2d 397 (1969); *Martinez v. People,* 162 Colo. 195, 425 P.2d 299 (1967). *See also American Bar Association Standards for Criminal Justice Relating to The Prosecution Function,* § 5.8.

Accordingly, we reverse and remand for a new trial.

MR. JUSTICE LEE does not participate.