No. 25778

**The People of the State of Colorado v.
Howard Ray Key**
(522 P.2d 719)

Decided May 6, 1974. Rehearing denied June 17, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Sara Duncan, Special Assistant, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

MR. JUSTICE LEE delivered the opinion of the Court.

Howard Ray Key was convicted of burglary and arson by a jury in the Prowers County district court. We find no prejudicial error and therefore affirm the convictions.

The evidence showed that Everett Bever and his wife,

Mary, left their home in Lamar in midafternoon on May 31, 1971, to travel to Alamosa. Early the following morning, they were notified by telephone that their home had been burned. They immediately returned to Lamar. On inspecting their home they discovered several items of personal property missing, including a clock-radio, a transistor radio, some watches, and other items of jewelry.

The following afternoon, Officer A. E. Benbrook of the Lamar police department confronted appellant and a companion, Charles Hiner, in the Lamar city park. Appellant had the Bever transistor radio in his possession. After receiving written authorization from appellant, a search was made of the room he and Hiner occupied at the Lamar Hotel. The officers discovered among other things three watches belonging to the Bevers.

Charles Hiner testified for the prosecution. He stated that appellant left their hotel room before midnight on May 31 and returned between 1 and 1:30 a.m. Shortly thereafter he again left the room and returned between 2:30 and 3 a.m., bringing with him two radios and some jewelry. He stated to Hiner that he had taken the items from a "big white house" on 6th Street and that he had set the house afire in order to cover up his fingerprints. The Bevers lived in a white house located at 211 6th Street in Lamar.

Appellant offered no testimony in his own behalf.

It is contended that the trial court committed reversible error in two particulars: first, the court improperly limited cross-examination of the People's witnesses, Officer Benbrook and Charles Hiner; and, second, that the court erroneously allowed the prosecution to elicit comments on appellant's refusal to speak out in his own behalf.

I.

With respect to the cross-examination of Officer Benbrook, counsel sought to impugn the character and credibility of Charles Hiner before Hiner had been called as a witness for the People. The court properly ruled that cross-examination in this area was premature. It directed that Officer Benbrook remain available for recall as a witness for the

defense after Hiner had testified. Appellant chose not to recall Benbrook, apparently because of the extensive cross-examination of Hiner permitted by the court relating to a variety of matters bearing upon Hiner's character and credibility.

 Concerning the limitation on cross-examination of the witness Hiner, our examination of the record indicates the court permitted great latitude in counsel's questioning of Hiner for impeachment purposes. Hiner was interrogated concerning his poor financial condition, his moral character, his involvement in other criminal conduct, specifically a "roll job," and concerning prior arrests. In our view, the trial court complied with the pronouncements of this Court that cross-examination should not be unduly restricted, but, rather, should be liberally extended to permit thorough inquiry into the motives of a witness testifying for the prosecution. *People v. King,* 179 Colo. 94, 498 P.2d 1142; *Tollifson v. People,* 49 Colo. 219, 112 P. 794. Appellant was given a full and fair opportunity to develop his theory of defense and we find no abuse of discretion in the court's evidentiary rulings in this respect. *People v. Chavez,* 182 Colo. 216, 511 P.2d 883; *Archina v. People,* 135 Colo. 8, 307 P.2d 1083.

## II.

Appellant's second assignment of error relates to questions of the district attorney directed to Officer Benbrook, which revealed that appellant made little or no response to police questioning. While no appropriate objections to these questions or answers were made at trial, appellant asserts they constitute fundamental error, thus mandating a new trial.

 This Court has repeatedly held that the prosecution may not refer to a defendant's exercise of his Fifth Amendment right to remain silent in the face of accusation. *People v. Burress,* 183 Colo. 146, 515 P.2d 460; *People v. Robles,* 183 Colo. 4, 514 P.2d 630; *People v. Wright,* 182 Colo. 87, 511 P.2d 460; *People v. Mingo,* 181 Colo. 390, 509 P.2d 800; *Hines v. People,* 179 Colo. 4, 497 P.2d 1258.

 On the other hand, not every reference to the exercise

of this right mandates automatic reversal. The relevant inquiry is whether the prosecution "utilized defendant's silence as a means of creating an inference of guilt." *Hines v. People, supra. See also Meader v. People,* 178 Colo. 383, 497 P.2d 1010; *Montoya v. People,* 169 Colo. 428, 457 P.2d 397; *Martinez v. People,* 162 Colo. 195, 425 P.2d 299.

The portions of the record here complained of show no emphasis placed on appellant's right to remain silent. The record indicates three instances when, in the recitation of events involving appellant's arrest, advisement, and questioning, Officer Benbrook in answer indicated appellant remained silent.

These instances are, first, at the time of his arrest appellant was asked his name, to which he responded. The question was then asked of Officer Benbrook: "Was there any more conversation?" to which Benbrook answered, after colloquy between court and counsel: "I believe there was not, right at that time." The other two references are found in the following questions directed to Benbrook and in his answers:

"Q All right. What took place there?

"A I took Mr. Key in my office, in the presence of Officer Reynolds; Mr. Hiner was left outside in another room.

"Q All right. Was there any conversation there?'

"A Yes.

"Q Relate the conversation?

"A At first I advised Mr. Key of his rights.

"Q And what do you mean by that?

"A I advised him that he had the right to remain silent, anything that he said could and would be used against him in a Court of law. I also advised him that if he wished he could have an attorney present before any questioning, and that if he could not afford an attorney, one would be appointed by the Court to represent him.

"Q All right. Then what happened?

"A Then I had the same warning on a form —

SHELDON EMESON: If the Court please — All right, go ahead. I withdraw any possible objection I have at this time.

THE COURT: You may continue with your answer if you recall the question?

"A This form had practically the same warning on it, with questions: Did he understand his rights; did he wish an attorney; did he, at that time, want to go ahead and talk, and he said 'No.'

"Q All right. That was the conversation?

"A Yes, sir.

"Q Any other conversation?

"A I believe not, right then."

■ The record does not disclose any other references, either direct or indirect, by the district attorney to appellant's right to remain silent, as contrasted with the situation in *Hines v. People, supra,* where the district attorney in closing argument to the jury commented on the defendant's silence as a means of creating an inference of defendant's guilt.

■ We do not consider the foregoing references to the silence of the appellant to be intentionally designed to provoke adverse inferences of guilt in the minds of the jury. Nor are they so repeated or gross in character, even though they may have been inadvertently elicited, as to provoke such inferences of guilt and thus require reversal. Assuming them to be of constitutional proportion, still, in view of the overwhelming evidence of appellant's guilt, we find them in the setting of this case to be so unimportant and insignificant as to be "harmless beyond a reasonable doubt." *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

The judgment is affirmed.

MR. JUSTICE ERICKSON dissents.

MR. CHIEF JUSTICE PRINGLE does not participate.