## No. 27071

### The People of the State of Colorado v. Joseph Anthony Atencio

(565 P.2d 921)

Decided May 16, 1977.                    Rehearing denied July 11, 1977.

---

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, J. Stephen Phillips, Assistant, David K. Rees, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Carol L. Gerstl, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant-appellant Atencio was found guilty by a jury of possession of a narcotic drug[1] and conspiracy to sell.[2] On this appeal, the defendant asserts several grounds for reversal. We find no reversible error and therefore affirm.

According to the evidence, Officer Ramirez of the Drug Enforcement Administration Task Force learned from one Al Maestas that "Joe," who was located in Colorado Springs, had heroin for sale. Maestas arranged a meeting in Colorado Springs between Ramirez and "Joe," who was subsequently identified as defendant Atencio.

In Colorado Springs, Maestas entered a house on Fountain Street where he and an informant negotiated a sale by Atencio to Ramirez of six and a half ounces of heroin. Atencio came out of the house, and he and Ramirez drove to a location on Las Animas Street. Atencio left the car, was observed on the porch of a nearby house and then disappeared. He returned with a tinfoil packet which he described as containing four and a half ounces of heroin. Ramirez then exited from the car to get money from the trunk and to give a pre-arranged signal to other drug enforcement officers at the scene. Atencio noticed the converging vehicles and fled on foot. Officer Roberts, pursuing him, saw him tear a foil packet and throw its contents into the air. As Atencio turned a corner, he dropped a torn foil packet, People's Exhibit C. Eventually, he was caught and arrested.

Meanwhile, Officer Forde scraped the white powder which Atencio had thrown into the air from the sidewalk into a folded index card. This was identified as People's Exhibit A. There was contradictory evidence as to the next link in the chain of custody of Exhibit A. Forde testified he gave the packet to Officer Maestas who handed it to Officer Pizzitola of the Colorado Springs Police Department. Pizzitola stated that Forde gave it to him directly. All three officers were near each other in the same room at the time the evidence was handed over. Also, there was an inconsistency in regard to Officer Pizzitola's entry on the custodian invoice sheet which

---

[1]Sections 12-22-302 and 12-22-322(2)(b), C.R.S. 1973. The original charge, possession with intent to sell narcotics (section 12-22-322(1)) was reduced to the possession charge.
[2]Section 12-22-322(1)(h) and (2)(c), C.R.S. 1973.

referred to a plastic packet rather than the paper index card which all other custodians described. Officer Pizzitola gave the evidence to the evidence custodian, who, in turn, delivered it to Dr. Urich, the coroner. Exhibits A and C were tested for heroin with positive results.

## I. *Chain of Custody*

A. Atencio urges reversal on the ground that the trial court erroneously admitted into evidence People's Exhibit A, although there was a serious break in the chain of custody, raising the possibility the evidence had been tampered with or altered. We reject this contention.

Continuous control or possession of the evidence by drug agents and police was shown from the time Atencio threw the powder into the air until Dr. Urich tested it, and the evidence was properly sealed, initialed and dated. *See People v. Vandiver,* 191 Colo. 263, 552 P.2d 6 (1976). Even where there is some confusion about the chain of custody, so long as the evidence was accounted for at all times, the evidence is admissible. Confusion may prompt speculation about the possibility of tampering, but where there is only speculation, the evidence may be admitted and the jury may consider the effect of the confusion on the weight to be given to the evidence. *People v. Smith,* 182 Colo. 228, 512 P.2d 269 (1973). The trial court did not err in admitting Exhibit A.

B. The jury was instructed to disregard Exhibits A and C if it found the prosecution had failed to establish the chain of custody beyond a reasonable doubt. On cross-appeal, the prosecution challenges the validity of Instruction 15, which reads as follows:

"It is the burden of the prosecution to show beyond a reasonable doubt that there was no alteration of or tampering with the evidence consisting of Exhibits A and C. One of these is the paper packet containing scrapings from the sidewalk contained in Exhibit A and the other is the aluminum foil contained in Exhibit C. It is your duty as fact finders to determine the weight of the evidence bearing upon the chain of custody of these exhibits. If you do find that the prosecution has not established beyond a reasonable doubt that there was no substitution of or tampering with either of said exhibits then you are not to consider such exhibit in your deliberations. Should you find that the prosecution has not carried out its burden as herein defined as to both exhibits then you shall find the defendant not guilty."

We agree that the instruction should not have been given.

Whether there is a complete chain of custody of evidence is a question to be determined by the court before it admits the evidence. Once evidence is admitted, any weakness in the chain of custody is a question of weight for the jury. *See People v. Sanchez,* 184 Colo. 25, 518 P.2d 818 (1974).

## II. *Cross-Examination*

A. Defendant's second ground for reversal is that the trial court erroneously restricted the cross-examination of Officer Ramirez thereby substantially impairing defendant's constitutional right to confront witnesses. At an *in camera* hearing, it was revealed that Officer Ramirez had been discharged from his law enforcement job and was facing criminal charges for assault in an unrelated incident. The record reveals that the defendant wanted to elicit these facts from Ramirez on cross-examination in order to cast doubt on his reliability, stability, perceptions and memory by showing him to be short-tempered and erratic.

Atencio argues, for the first time on appeal, that the requested cross-examination was intended to elicit evidence of bias or a motive to testify favorably. No such offer to justify the proposed cross-examination was made by defendant at trial. The defendant cannot now be heard on the issue. *See People v. Cushon*, 189 Colo. 230, 539 P.2d 1246 (1975).

As this court stated in *People v. King*, 179 Colo. 94, 498 P.2d 1142 (1972):

"[T]he limits of cross-examination of a witness concerning credibility generally is a matter resting largely within the sound discretion of the trial judge, in view of all the circumstances of the particular case. We reaffirm the general rule denying the competency of evidence of mere arrests or pending charges against a witness, *without more*, for the reason that want of credibility may not logically be inferred from naked accusations of which the law presumes a person innocent until convicted." (Emphasis added.)

Where, as here, there was no allegation at trial that the witness' testimony might be affected by a desire to make a good deal in his own criminal case, the trial court should not be required to second-guess counsel for the defendant. Under the facts here, it was not error for the trial court to restrict inquiry into the charges against the witness.

The brief of the attorney general suggests that even if the court's restriction on cross-examination was error, it was harmless because there was ample other evidence showing the defendant possessed heroin at the date and place charged in the information.

B. Defendant's third charge of error challenges the trial court's refusal to allow cross-examination regarding the placing of the house on Las Animas Street under security. Ramirez had observed Atencio go onto the porch of the house, but did not see him go inside, before returning with the heroin. The securing of this house was irrelevant to both charges of which Atencio was convicted. The trial court has discretion to foreclose cross-examination on irrelevant collateral matters. *See People v. Crawford*, 191 Colo. 504, 553 P.2d 827 (1976), and *People v. Cushon, supra.*

### III. *Comment on the Right to Remain Silent*

Atencio's final assertion of error was that the trial court failed to declare a mistrial following a prosecution witness' testimony that Atencio had refused to answer questions until he saw an attorney. Defendant claims this testimony was an impermissible comment on his exercise of the constitutional right to remain silent.

Mere questioning, without further comment, created no inference of guilt where, as here, the testimony was required to show that a volunteered admission defendant made later had been given voluntarily after he was fully advised of his rights. Officer Cope testified that he advised the defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the defendant understood those rights. Officer Cope then testified as follows:

"Q. Did you ask him if based on the foregoing [Miranda rights] did he wish to make any statements to you?

"A. Yes, sir, I did.

"Q. What was his response?

"A. He stated to me he wished to make no statements to me regarding this case.

"Q. And then did he say anything else?

"A. Yes, I advised him I would return him to his cell and at that time — may I quote from my report?

"Q. Yes.

"A. He stated to me and I quote that he had tried to make a deal with those guys last night. I asked him what he was referring to and at that time he stated that he and again I quote told them last night if they would let me go I would take them to the guy I got the stuff from. I then stopped him from his statements to me and asked him if he wished to continue to make any statements without the presence of an attorney. At that time he stated he did not want to make any statements and I returned him to his cell." [ff. 412-14]

This testimony about Atencio's exercise of his right to remain silent was not emphasized or repeated, except by defense counsel in her cross-examination. In *People v. Key*, 185 Colo. 72, 522 P.2d 719 (1974), we said:

"This Court has repeatedly held that the prosecution may not refer to a defendant's exercise of his Fifth Amendment right to remain silent in the face of accusation. *People v. Burress*, 183 Colo. 146, 515 P.2d 460; *People v. Robles*, 183 Colo. 4, 514 P.2d 630; *People v. Wright*, 182 Colo. 87, 511 P.2d 460; *People v. Mingo*, 181 Colo. 390, 509 P.2d 800; *Hines v. People*, 179 Colo. 4, 497 P.2d 1258.

"On the other hand, not every reference to the exercise of this right mandates automatic reversal. The relevant inquiry is whether the prosecution 'utilized defendant's silence as a means of creating an inference of guilt.'

*Hines v. People, supra. See also Meader v. People*, 178 Colo. 383, 497 P.2d 1010; *Montoya v. People*, 169 Colo. 428, 457 P.2d 397; *Martinez v. People*, 162 Colo. 195, 425 P.2d 299."

Here, the prosecution did not use the defendant's silence as a means of creating an inference of guilt. There was no error in denying the defendant's motion for a mistrial.

Defendant asserted errors of constitutional magnitude. Even if these acts and omissions of the trial court were erroneous, we believe that they were harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The trial court's judgment is affirmed.

MR. JUSTICE ERICKSON does not participate.