580 P.2d 813 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Thomas Leo ORTEGA, Defendant-Appellant.
No. 76-202.
Colorado Court of Appeals, Div. 1.
March 16, 1978.
Rehearing Denied April 6, 1978.
Certiorari Granted July 3, 1978.
*815 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Felipe V. Ponce, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, James F. Dumas, Jr., Chief Deputy State Public Defender, Dorian E. Welch, Deputy State Public Defender, Denver, for defendant-appellant.
BERMAN, Judge.
Defendant, Thomas Leo Ortega, was convicted by a jury of felony theft and first degree criminal trespass. Finding merit in his contention that certain remarks of the prosecutor in closing argument impermissibly referred to defendant's failure to make a detailed exculpatory statement upon arrest, we reverse and remand for a new trial.
The driver of a pickup truck was injured one morning when he lost control of the vehicle. Upon returning from treatment of his injuries, he discovered certain tools and other items were missing from the truck. Observations by police led them to obtain a search warrant for a house at which defendant was present. Executing the warrant at the house, the officers saw some of the missing items described in the warrant, and arrested the defendant.
After being advised of his rights, defendant told the officers that he had helped bring the items to the house, and that they had been removed from a pickup truck. In the midst of the officers' questioning of defendant, another man whom defendant indicated had participated in the items' removal arrived at the house and was also arrested. He made a statement to the effect that he and defendant had removed the tools for safekeeping purposes only.
At trial, defendant's theory of the case was that in removing the tools he had lacked any intent to steal and that he had sought only to safeguard the items. To refute that defense, the prosecutor reviewed with the jury in closing argument the circumstances surrounding defendant's arrest. He directed the jury's attention to defendant's custodial silence, reiterating that "[o]ther than [acknowledging he had brought the items to his house], the defendant said nothing," and subsequently, in his rebuttal remarks, posed the following series of rhetorical questions:
"Is it reasonable, ladies and gentlemen, in light of your common sense and your every day experience in life, that this defendant didn't have a culpable mental state; if he didn't intend to get into that pickup and steal those things and if he didn't actually steal them, is it reasonable *816 in light of your common sense, that once he was placed under arrest for theft, that the defendant, a totally innocent Good Samaritan, as the defense counsel calls him, responded to the Sheriff's questions by saying, yes, I took the things, without saying another word? Is it reasonable that the defendant's statement to the Sheriff didn't include a protestation of innocence if he was a totally Good Samaritan ? . . ." (emphasis added)
Since Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the self-incrimination guarantee of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, has barred in state criminal trials prosecutorial comment on an accused's exercise of his right of silence. Although Griffin involved remarks directed at defendant's reliance on his right of silence at trial, i. e., his election not to testify, its rationale implicitly proscribes references to the defendant's silence during custodial interrogation. People v. Atencio, Colo., 565 P.2d 921 (1977); Hines v. People, 179 Colo. 4, 497 P.2d 1258 (1972); see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); People v. Reynolds, Colo., 575 P.2d 1286 (announced February 6, 1978). And, in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that, since "post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested," the due process clause of the Fourteenth Amendment similarly proscribes the drawing of adverse inferences from an accused's silence upon arrest. See People v. Reynolds, supra; cf. United States v. Hale, 422 U.S. 71, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (accused's silence at arrest has minimal probative value in evaluating a defense offered at trial, yet significant potential for prejudice).
In the instant case, the prosecutor's remarks to the jury were in manifest violation of the constitutional protections assured by Griffin and Doyle. Notwithstanding the presumption of defendant's innocence, his privilege against self-incrimination and the assurances given defendant in his Miranda warnings, the prosecutor's remarks expressly directed the jury to consider as evidence of defendant's culpable mental state and guilt, defendant's failure upon arrest to protest his innocence or to proffer an exculpatory explanation. The remarks were particularly egregious here, since the question of defendant's guilt or innocence hinged solely on the jury's acceptance or rejection of defendant's contention that he had not intended to deprive permanently the injured man of the tools in his truck.
The People argue, however, that because defendant made a brief statement to the arresting officers, argument to the jury expressly referring to defendant's subsequent silence was constitutionally permissible. But a defendant in custody need not refrain from saying anything to preserve his Fifth Amendment rights. Miranda, for example, recognized that such a defendant can volunteer information after receiving his constitutional warnings, without surrendering his right of silence: "The mere fact that [a defendant in custody] may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries." Miranda v. Arizona, supra. Additionally, the view urged by the People is incongruous with the requirements of due process. "Surely [defendant] was not informed here that his silence, as well as his words, could be used against him at trial." Doyle v. Ohio, supra, quoting United States v. Hale, supra (White, J. concurring). Thus, we conclude that defendant's initial volunteered statement did not operate to waive his right of silence at arrest and did not serve to authorize the prosecutor's manifestly improper references at trial to defendant's reliance on that right. State v. Boyd, W.Va., 233 S.E.2d 710 (1977); State v. Lyle, 73 N.J. 403, 375 A.2d 629 (1977); People v. Robinson, 44 Ill.App.3d 447, 3 Ill.Dec. 43, 358 N.E.2d 43 (1976); Commonwealth v. Hinds, 244 Pa.Super. 182, 366 A.2d 1252 (1976); see People v. Reynolds, supra.
*817 Similarly, the prosecutor's comments cannot be excused by defendant's failure expressly to advise arresting officers that his silence while in custody was in reliance on his privilege against self-incrimination as assured him by the Miranda warnings. The majority opinion in Doyle refused to require, as urged by the dissent, any showing by an accused that his "silence was induced by reliance on deceptive advice." Doyle v. Ohio, supra (Stevens, J., dissenting). Rather, the court explained that "[a]fter an arrested person is formally advised by an officer of the law that he has a right to remain silent, the unfairness occurs when the prosecution, in the presence of the jury, is allowed to [engage in conduct penalizing] what may be the exercise of that right." (emphasis added)
Nor can the prosecutor's remarks be deemed a fair response to closing arguments of defendant's attorney. In his initial closing argument, the prosecutor reviewed with the jury in great detail circumstances of the items' removal. He argued, for example, that defendant had removed the items without the driver's authorization and without telling other bystanders or the officers investigating the accident, and urged that if the items had been removed for safekeeping and with the intent to redeliver, they would not have been taken inside the defendant's house.
Defendant's attorney emphasized in response that defendant had removed all items from the truck including numerous items of only nominal value such as an animal syringe and a pair of rubber boots, that the items had not been taken into the house in a surreptitious manner, that the items were left in a conspicuous pile on the back porch, and that defendant's companion who had assisted in the items' removal voluntarily entered defendant's house in front of which several patrol cars were parked. He concluded that, viewed in their totality, such circumstances refuted any wrongful purpose or consciousness of guilt in the actions of defendant or his companions.
While we do not doubt that the prosecutor is entitled to narrowly meet mis-leading defense argument concerning an accused's custodial silence, cf. Kurtz v. People, 177 Colo. 306, 494 P.2d 97 (1972), comments going beyond those bounds and suggesting such silence justifies an inference of guilt is constitutionally impermissible, and we find no invitation in the argument of defense counsel to warrant the prosecutor's comments in rebuttal here. And, the prosecutor's exhortations cannot be justified as merely acknowledging inferences too natural and irresistible for the jury to ignore. "What the jury may infer, given no help from the court [or prosecutor] is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." Griffin v. California, supra.
While recognizing that not every reference to the exercise of the right to remain silent during custodial interrogation mandates reversal, People v. Key, 185 Colo. 72, 522 P.2d 719 (1974), we conclude that the prosecutor's comments here require a new trial even in the absence of a specific objection by defendant's trial counsel.
Preliminarily, we observe that, in view of its explicit character, the constitutional violation here was a severe one. The prosecutor's colloquy here directly "utilized the defendant's silence as a means of creating an inference of guilt," Hines v. People, supra, and did not merely allude to or unintentionally evoke testimony relating to the fact of defendant's custodial silence. Compare Hines v. People, supra, with People v. Atencio, supra; People v. Travis, 558 P.2d 579 (1977); People v. Key, supra; People v. Hauschel, Colo.App., 550 P.2d 876 (1976).
In addition, the nature of the evidence of defendant's guilt and the posture of his defense militate against a finding of harmless error here. As detailed previously, the question of defendant's culpability rested solely on the jury's determination of whether he had acted with the requisite intent, and the wholly circumstantial evidence relied on by the prosecution was subject to conflicting inferences. In such circumstances, we are not persuaded beyond a reasonable doubt that the prosecutor's remarks *818 did not assume importance to the jury in rejecting defendant's defense and in rendering its verdict of conviction. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
In closing, we pause to note that the burden imposed on the prosecutor by the mandate of Griffin and Doyle is not an unrealistic or unduly burdensome one. The richness of the prosecutor's argument concerning the circumstances of the items' removal and defendant's pre-arrest conduct demonstrates that omitting comments on the defendant's custodial silence would not have frustrated the prosecutor's efforts or the search for the truth in this case.
Defendant's remaining assignments of error involve issues which we regard as unlikely to arise at retrial, and accordingly, we do not address them here.
The judgment is reversed and the cause is remanded for a new trial.
SILVERSTEIN, C. J., and COYTE, J., concur.