Donaciano ESQUIBEL, Petitioner–
Appellant,

v.

J. Frank RICE, Dr.; Gale A. Norton,
Attorney General, Respondents–
Appellees.

No. 92–1343.

United States Court of Appeals,
Tenth Circuit.

Jan. 7, 1994.

Andrew C. Heher, Deputy State Public Defender (David F. Vela, Colorado State Public Defender, with him on the brief), Golden, CO, for petitioner-appellant.

Clement P. Engle, Sr. Asst. Atty. Gen., Crim. Enforcement Section (Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russell, First Asst. Atty. Gen., with him on the brief), Denver, CO, for respondents-appellees.

Before BALDOCK, ALDISERT *, and BRORBY, Circuit Judges.

ALDISERT, Circuit Judge.

This appeal by Donaciano Esquibel from a denial of a petition for writ of habeas corpus brought under 28 U.S.C. § 2254 requires us to decide if the jury instructions delivered during his trial in Colorado state court on a charge of second degree burglary "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). We are persuaded that there was no constitutional deprivation and affirm the judgment of the district court.

The district court had jurisdiction under Section 2254. The habeas petition was referred to a magistrate judge pursuant to Local Rule 605 of the United States District Court for the District of Colorado. The petition was reviewed de novo by the district court and subsequently denied. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. The appeal was timely filed under Rule 4(a)(1) of the Federal Rules of Appellate Procedure.

At Esquibel's state court trial for second degree burglary and theft, the court instructed the jury in Instruction Eight that the elements of second degree burglary were:

"1. That the defendant, 2. in the State of Colorado, at or about the date and place charged, 3. knowingly 4. *entered* a dwelling 5. with intent to commit therein the crime of theft."

*People v. Esquibel*, 794 P.2d 1065, 1066 (Colo. App.1990) (emphasis added).

In Instruction Ten, the court told the jury:

"Concerning the charges of Second Degree Burglary and Theft certain words and phrases have a particular meaning: ... 'UNLAWFULLY ENTERS' means a person who enters in or upon premises when he is not licensed, invited, or otherwise privileged to do so."

*Id.*

In his closing argument, defense counsel told the jury:

[F]orget all the stuff about all the other elements. We'll concede everything except identity. Don't waste your time on that. Identity is the issue. [The prosecutor] was right in that regard. Everything else has been proven beyond a reasonable doubt.

Tr. at 309–10. With the jury receiving the case in this posture, we must determine whether the failure to use the word "unlawfully" in the part of the instruction delineating the elements of second degree burglary constituted a deprivation of Esquibel's constitutional rights, even though the phrase "unlawfully enters" was later used to define the stated elements.

■ We review de novo a claim of constitutional error in jury instructions. *See Estelle v. McGuire,* — U.S. —, —, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Case v. Mondragon,* 887 F.2d 1388, 1393 (10th Cir.1989), *cert. denied,* 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990).

### I.

Esquibel was charged with second degree burglary and theft. At trial in Colorado state court, witness Kristi Kadlecek testified that at 9:00 a.m. on April 9, 1987 in Greeley, Colorado, she saw Esquibel loitering near her apartment building. According to the witness, Esquibel walked away quickly when he saw her. Thereafter, Kadlecek drove around the block and, upon returning, noticed Esquibel inside her neighbor's apartment. Kadlecek then entered her own apartment and called the police. Before the police arrived, she observed Esquibel leaving her neighbor's apartment and entering his lavender Cadillac. She recorded the license plate number of his automobile and gave it to the police when they arrived on the scene at 9:15 a.m. The police located Esquibel and arrest-

---

* Ruggero J. Aldisert, United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

ed him at 9:59 a.m. Kadlecek positively identified both Esquibel and his automobile at 10:11 a.m., within an hour of speaking to the police. Kadlecek again identified Esquibel in a police line-up three weeks later and a third time at trial.

Margaret Bothel was the tenant of the apartment in which Esquibel was observed by Kadlecek. She testified that he did not have permission to be in her apartment and that after the incident she discovered that her television was missing. Police officers testified that there were pry marks around the door indicating forcible entry. In his closing argument, the prosecutor emphasized the pry marks and evidence of forcible, unlawful entry.

Esquibel testified in his own defense, stating that at approximately 9:00 a.m. on April 9, he dropped his son off at school in the city of Greeley. He testified that he drove around various places in the Greeley–LaSalle area for the next hour, stopping at his apartment, a McDonald's restaurant and various locations looking for his brother. According to Esquibel, when he arrived home at 9:59 a.m. the police were waiting for him. A defense witness testified that she saw Esquibel in LaSalle at approximately 9:45 a.m.

The defense strategy at trial was to attack Kadlecek's identification of Esquibel. During a colloquy on jury instructions, while arguing for a special instruction on the hazards of eye witness identification, defense counsel stated: "Literally I will concede everything else except identity in closing argument and did essentially so in opening argument." Tr. at 281. At trial, Esquibel did not object to the instructions given to the jury. He was found guilty of second degree burglary and appealed to the Colorado Court of Appeals.

The state appellate court was of the view that the trial court erred by failing to include the term "unlawful entry" when listing the elements of second degree burglary, even though it used the term in defining the elements. Because Esquibel failed to object to the instruction at trial, however, the court applied the plain error standard of review, holding that "the failure to include the term 'unlawful entry' in the second degree burgla-

ry instruction does not rise to the level of plain error. The error is harmless beyond a reasonable doubt." *Esquibel,* 794 P.2d at 1066. The Colorado Supreme Court refused to grant certiorari, letting stand the Court of Appeals ruling.

█ Thereafter, Esquibel filed a petition for a writ of habeas corpus pursuant to Section 2254. The action was referred to a magistrate judge who recommended denial of the petition, concluding that an examination of the trial record "shows that the omission of the element of 'unlawful entry' from the jury instruction did not render the trial so fundamentally unfair that Mr. Esquibel was denied a fair trial in a constitutional sense." *Esquibel v. Rice,* No. 91–B–1488 (D.Colo. May 13, 1992) (Amnd. Rec. of Mag. Schlatter). On October 7, 1992 the district court adopted the findings of the magistrate and denied the petition.

Esquibel now appeals to this court. He raises a total of seven issues in his brief that may be distilled to two basic contentions: The trial court failed to use the term "unlawfully" in conjunction with the word "enters" in listing the elements of second degree burglary, even though it used the term "unlawfully enters" in defining the term "enters"; this failure (1) denied Esquibel rights protected by the due process clause and (2) the denial of these rights could not be considered harmless error, because they are rights guaranteed by the Sixth and Fourteenth Amendments under *Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991). Because this is federal habeas corpus and the infirmity alleged is limited to the jury instructions at the state trial, our review is quite limited:

> The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten,* 414 U.S., at 147 [94 S.Ct. at 400], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" *id.,* at 146 [94 S.Ct. at 400].

*Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977). To be sure, if we conclude that there was no due

process violation, we do not meet the question of harmless error.

## II.

In determining whether the district court properly dismissed Appellant's habeas petition, it is helpful to understand what is not before us.

### A.

The Colorado Court of Appeals determined that "the failure to include the term, 'unlawful entry' in the second degree burglary instruction does not rise to the level of plain error. The error is harmless beyond a reasonable doubt." *Esquibel,* 794 P.2d at 1066. Because that court relied on *People v. Rodgers,* 756 P.2d 980 (Colo.1988), we must conclude that it utilized a federal constitutional law analysis in its laconic discussion.

 Whether or not the Colorado Court of Appeals' analysis was premised on federal law, a federal court does not review the decision of a state appellate court when entertaining a petition for habeas corpus. Rather, a federal court's inquiry is limited to the lawfulness of the present detention of a state prisoner. The federal habeas corpus statute permits a federal court to entertain a habeas petition on behalf of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In the felicitous expression of Justice Brennan, the "jurisdictional prerequisite is not the judgment of a state court but detention *simpliciter.*" *Fay v. Noia,* 372 U.S. 391, 430, 83 S.Ct. 822, 844, 9 L.Ed.2d 837 (1963). We deem it important to emphasize this distinction because Appellant has devoted so much of his argument to the doctrines of plain error and harmless error as discussed by the Colorado appellate court on direct appeal. We are not bound by the Colorado Court of Appeals' emphasis on plain error and harmless error in a matter that came before it on direct appeal with state procedural and substantive law and federal constitutional law overtones. *See Chaney v. Brown,* 730 F.2d 1334, 1346 (10th Cir.1984) (under 28 U.S.C. § 2254(d), a federal court is not bound by a state court's determination of legal questions or mixed questions of law and fact).

### B.

What is also not before us is a situation in which a necessary element of a charged offense was totally omitted from the trial court's jury instructions. *See Rael v. Sullivan,* 918 F.2d 874, 875 (10th Cir.1990) ("a complete failure to instruct on an essential element of an offense violates the right to due process"); *see also Hunt v. State of Oklahoma,* 683 F.2d 1305, 1311 (10th Cir. 1982). We emphasized the perils of omitting essential elements in defining state offenses in *Sullivan* and *Hunt,* even though we found no due process violation in either case. In *Sullivan,* 918 F.2d at 875, the trial court did not include the term "wrongful" in the definition of "compulsion" under New Mexico's extortion statute; in *Hunt,* 683 F.2d at 1307, the instruction failed to include the term "scienter" in defining Oklahoma's obscenity statute. We found no due process violation in either case, and we believe that the instant appeal before us assumes *a fortiori* proportions. Here, the term "unlawfully" was omitted in Instruction Eight but was specifically used in Instruction Ten. This is not a case where a "complete failure to instruct on an essential element of an offense violates the right to due process." *Sullivan,* 918 F.2d at 875. An important factor in any analysis of a potential due process violation, this is a distinction *with* a difference. It is to this due process analysis that we now turn.

### III.

██ Certain well-established precepts of constitutional law govern a due process challenge to jury instructions: "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.... Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the [state] model." *McGuire,* —— U.S. at ——, 112 S.Ct. at 482. Moreover, a single instruction may not be judged in artificial isolation but must be viewed in the context of the overall charge.

*Boyd v. United States,* 271 U.S. 104, 107, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926). Although this does not mean that an instruction by itself may never rise to the level of constitutional error, *see Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972), it does recognize "that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Cupp,* 414 U.S. at 147, 94 S.Ct. at 400. "Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Id.* In reviewing an ambiguous instruction, "we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *McGuire,* —— U.S. at ——, 112 S.Ct. at 482 (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990)).

## IV.

■ It is against these precepts that we must now examine the "several components of the trial," especially the testimony of the witnesses and the arguments of counsel, as is required by *Cupp.* Significantly, although the alleged due process error is the use of the word "enters" instead of "unlawfully enters," the lawfulness of the entry was never an issue at trial. Police officers testified that there were pry marks around the door to the victim's apartment, evidence of unlawful entry. The victim herself testified that the burglar did not have her permission to enter the premises and that her television was stolen. This testimony was not controverted by Esquibel through any testimony whatsoever. In his closing argument, the prosecutor emphasized that these pry marks and the testimony of the victim were evidence of a forcible and unlawful entry. Defense counsel not only did not disagree, he expressly conceded the presence of uncontradicted evidence of unlawful entry.

What is most significant, if not controlling in this case, was the entire strategy of the defense at trial, a circumstance that removes this case from any potential precedential bite

of our previous cases of *Sullivan* and *Hunt.* Defense counsel addressed all of the elements of the second degree burglary offense and then told the jury that he "concede[d] everything except identity." Indeed, he volunteered to the jury that "[e]verything else has been proven beyond a reasonable doubt." Tr. at 309–310.

There was no such concession in *Sullivan* or *Hunt:* There was no concession in those cases that the prosecutor had proved "wrongful compulsion" or "scienter" beyond a reasonable doubt. But here, Esquibel's defense counsel conceded in his closing argument that the prosecutor had proved that someone had "unlawfully entered" the apartment of Margaret Bothel and that this conduct occurred "knowingly" and "with intent to commit therein the crime of theft." Esquibel's defense was that, although a burglary had occurred, he did not do it. His sole argument, as advanced by defense counsel, was that he was elsewhere at the time of the burglary, that Kadlecek's eyewitness identification of him was in error and that she was equally mistaken in writing down the license number of his lavender Cadillac. According to Esquibel, this was a classic case of mistaken identity.

Defense counsel told the court at the jury instructions colloquy that he had conceded all the elements of the burglary offense except identity "in opening argument." Tr. at 281. He further stated that "[l]iterally I will concede everything else except identity in closing argument," *id.,* which is precisely what he did in his closing speech to the jury.

Even if we were to consider the jury instructions ambiguous, we are not prepared to conclude, after "reviewing an ambiguous instruction such as the one at issue here", that there exists " 'a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the constitution." *McGuire,* —— U.S. at ——, 112 S.Ct. at 482 (quoting *Boyde,* 494 U.S. at 380, 110 S.Ct. at 1198). There was uncontroverted evidence of forced entry introduced through the police officers. There was uncontroverted testimony by the victim that the forced entry was unlawful. Defense counsel explicitly conceded that all elements of the crime had been

proved with the single exception of identity. Finally, although the element of "unlawfulness" was omitted from Instruction Eight, it prominently appeared in Instruction Ten, which defined the elements enumerated in Instruction Eight.

Accordingly, we are persuaded that no due process violation occurred. This makes it unnecessary for us to reach any question of harmless error or other issues raised by Appellant.

## V.

We AFFIRM the judgment of the district court in denying the petition for a writ of habeas corpus.

BRORBY, Circuit Judge, dissenting.

I respectfully dissent.

Mr. Esquibel was convicted by a jury in Colorado state court of the crime of burglary. Colorado state law requires the jury to find the defendant, inter alia, unlawfully entered the dwelling of another. "Unlawful" entry is an essential element of the crime of burglary. However, the jury in Mr. Esquibel's case was instructed simple entry was sufficient to support a guilty verdict. The element of unlawfulness was omitted from the list of elements of the crime.

The majority concludes the element of unlawfulness of the entry was not truly omitted from the list of essential elements given to the jury. It is only on this precise point I differ from the majority.

The majority classifies the instructions as ambiguous, while I would hold the instructions completely omitted an essential element of the crime. The jury was instructed it must find the element of entry in order to convict. Elsewhere in the instructions, the jury was correctly charged on the meaning of the phrase "unlawful entry." I regard the definition as mere surplusage. "Unlawful" was not part of the list of elements; nowhere was the jury instructed it must find Mr. Esquibel's entrance was unlawful in order to convict him. The majority concludes a reasonable juror would have understood "unlawful" was an essential party of the "entry" requirement. I would conclude to the contrary.

This case presents a unique factual scenario. Defense counsel wisely concluded the only hope of acquittal reposed in the possibility of convincing the jury a reasonable doubt existed concerning the identity of the burglar. To maintain credibility for Mr. Esquibel with the jury, defense counsel conceded all elements of the crime except identity. The evidence concerning unlawful entry was not only overwhelming, it was undisputed. Defense counsel's only option was to do as counsel did. However, the defense counsel's concessions are not relevant to our analysis until we have determined that the harmless error analysis is appropriate. I am concerned the majority is looking at the defendant's obvious guilt prematurely. The facts of the case are not relevant in determining whether plain constitutional error exists.

I believe plain constitutional error did occur; therefore my next question is whether the harmless error analysis should be used. Applying the law of this Circuit, I would conclude the omission of an essential element from the jury charge precludes a harmless error analysis. *Rael v. Sullivan*, 918 F.2d 874, 875 (10th Cir.1990) ("a complete failure to instruct on an essential element of an offense violates the right to due process"), *cert. denied*, 499 U.S. 928, 111 S.Ct. 1328, 113 L.Ed.2d 260 (1991). Also, the Supreme Court in *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), held the record must clearly indicate the jury made all requisite findings to convict. The question before this court is not whether Mr. Esquibel was guilty; nor is the question the sufficiency of the evidence. The sole question we should consider is whether it is clear from the record the jury made all required findings. I do not believe the record clearly shows the jury made all required findings.

I would find plain error exists and is not cured. I would order the State of Colorado to release Mr. Esquibel or give him a new trial.